# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

## FRESNO DIVISION

| | |
|---|---|
| **ELIJAH WHITE**, | CASE NO. 07cv1257-IEG(PCL) |
| Petitioner, | **ORDER DENYING 28 U.S.C. § 2254 HABEAS PETITION** |
| vs. | |
| **DEBRA DEXTER, WARDEN**, | |
| Respondent. | |

Elijah White ("White"), a state prisoner serving a third strike term of 26-years to life, seeks a 28 U.S.C. § 2254 writ of habeas corpus. A jury convicted White in July 2004 of felony failure to register a second residence address, as required of convicted sex offenders pursuant to CAL. PENAL CODE § 290 ("Section 290"). Proceeding *pro se*, he alleges due process violations and cruel and unusual punishment arising from purportedly erroneous jury instructions, vague statutory language criminalizing failure to register all "residences," insufficiency of the evidence, and failure to strike a prior conviction, among other things. Respondent filed an Answer (Dkt No. 10), and White filed a Traverse (Dkt No. 16). By Order entered November 25, 2008, this matter was reassigned from the bench of the United States District Court for the Eastern District of California to visiting Chief District Judge Irma E. Gonzalez, United States District Court for the Southern District of California. (Dkt No. 25.) For the reasons discussed below, the Petition is **<u>DENIED</u>**.

## I.      BACKGROUND

In its thorough decision entered August 23, 2006, the California Court Of Appeal affirmed the judgment of conviction  and third strike sentence for White's failure to register a residence address in the jurisdiction of California City, Kern County.  (Lodg. 1.)  That court summarized the procedural history and factual background in materially undisputed detail.  This Court applies the statutory presumption of correctness to the state court's factual findings.  28 U.S.C. § 2254(e)(1).  Unless otherwise noted, all code section citations are to the California Penal Code.

> The amended information charged White with one count of failing to register as a sex offender. (§ 290.)  The information also alleged White had suffered two prior "strike" convictions within the meaning of section 667, subdivisions (b) through (i), and one of these convictions also required enhancement of White's sentence by one year pursuant to section 667, subdivision (b). [*See* Lodg. 6, Clerk's Transcript ("CT") pp. 213-215.]

> The case was tried to a jury.  For tactical reasons, **White stipulated that** (1) he was born on September 23, 1958; (2) **he had known since 1999 that he was required to register pursuant to section 290**; (3) **he knew that he was required to register at all residences**; (4) **on those occasions when he registered, he did not indicate he had a second residence**; (5) he registered in Los Angeles County at a variety of addresses, the last registration occurring on September 20, 2002; (6) **he listed the California City address when he was placed on misdemeanor probation on January 27, 2003, in the Mojave Division of the Kern County Superior Court;** (7) he listed a Los Angeles County address when he was placed on misdemeanor probation in Los Angeles County Superior Court on February 5, 2003; (8) **he listed the California City address when he was placed on misdemeanor probation on June 11, 2003,  in the Mojave Division of the Kern County Superior Court**; and (9) **he gave the California City address on May 17, 2003, when he was contacted on a traffic stop by officers from the California City Police Department.**  [*See* Lodg. 6, CT pp. 211-212, 242.]

> Officer Steven Kirk Patillo of the California City Police Department was dispatched to the California City address on October 31, 2003.  When he arrived, White and his wife, Ramona, were in the front yard and appeared to be arguing.  White entered the house as Patillo approached. Patillo received permission from Ramona to enter the house.  He found White in a bedroom.  Patillo saw men's and women's clothes through the open closet door.  **White identified himself and stated he lived at the house when not working in San Diego.  White did not give Patillo any other address.**

> Patillo transported White to the police station to book and release him with a citation for the domestic incident.  **When asked his address, White gave the California City address** and explained that he spent time there when not working in San Diego.

> **Patillo confirmed White was required to register as a sex**

**offender and had not done so at the California City address. Patillo also confirmed that White had registered previously but had not done so in the past year**.

Erlene Hudson, White's sister, lives in Bellflower in Los Angeles County. White stayed with her while he worked in San Diego. He worked a lot of hours, sometimes seven days a week. **He visited his children when he could, generally one to two times a month**. The visits generally lasted one day.

Ramona [White] testified that since White was paroled, he lived and worked in Southern California. He provided money for the support of the family. White and Ramona have been separated for three or four years. White moved his personal belongings to a storage unit in Southern California. **He used the California City address as his mailing address because Ramona did not move**.

Ramona explained that White had been at her residence only 30 to 40 minutes before he was arrested. **He visited the children about once a month during the year preceding his arrest**. He usually stayed a few hours. Occasionally, Ramona would let White sleep on the couch. White would pick up his mail when he visited the children.

**The deed to the California City residence is in the name of both Ramona and White**. Ramona considers the house her house. She considers herself married to White only in the legal sense because neither has taken steps to begin divorce proceedings.

**White testified** he was paroled to Long Beach when released from prison in 1999. **He lived in the Long Beach area until he was arrested.** His parole agent visited his residence twice a month until his parole was completed in 2002.

White worked for a union hall in Azusa, Los Angeles County, California. **He was living with his sister in Bellflower**. The site he worked at was in San Diego County. Some nights, if traffic was bad, he would sleep at the construction site where he was working. He had most of his personal items in storage until he stopped paying the rent on the unit.

White and Ramona have been separated for three to four years. **White used the California City address as his mailing address for certain purposes**. White also sent Ramona money at that address for the support of his children. **He tried to visit his children once every month**, but some months he was unable to do so because of work obligations.

**White used the California City address on court paperwork on the advice of his attorney. He claimed he told Patillo that when he visited his sons, he sometimes stayed in California City. He also told Patillo that he lived in Long Beach**.

The jury found White guilty. White admitted he suffered a prior rape conviction that qualified as a strike, which added a one-year enhancement to his sentence. He waived the right to a jury trial on the

3

second conviction, which was found to constitute a strike within the meaning of section 667, subdivisions (b) through (i) by the trial court.

The trial court denied White's motion to have one of the prior convictions struck pursuant to *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497. White was sentenced to a third strike term of 25 years to life, plus one year for the prior prison sentence enhancement.[1]

(Lodg. 1, pp. 1-5 (footnote omitted) (emphasis added.)

White's counsel petitioned the California Supreme Court for review on October 10, 2006. (Lodg. 2.) The 84-page petition asserted: (1) the trial court erred in the instruction defining "residence" as used in Section 290 and, if defense counsel had a duty to request a more accurate instruction, he was ineffective for failing to do so; (2) the statutory definition of "residence" was so vague and confusing it violated due process; (3) insufficient evidence supported White's conviction for failure to register the Kern County home of his estranged wife and their children as his residence address for any substantial period of time; (4) prejudicial failure to instruct the jury he "regularly resided" at the California City residence as an element of the crime the prosecution had to prove and, counsel was ineffective for failing to request it; (5) prejudicial failure to instruct the jury White had to know, for purposes of a Section 290 conviction, the California City house in particular was a residence he was required to register; (6) the trial court violated due process by exercising "arbitrary, capricious, and patently absurd" discretion in refusing to strike either of White's prior convictions, resulting in his conviction of a third strike felony offense; and (7) his third strike sentence imposed solely for failure to register a residence address constitutes cruel and unusual punishment. (Lodg. 2.)

On December 4, 2006, while the Petition For Review was pending, White filed a *pro se* habeas petition in the California Supreme Court, explaining it was "just an amendment" to the pending case to raise an issue counsel did not include in the Petition For Review "due to oversize brief." (Lodg. 4, p. 6.) He styled the new ground as "insufficient evidence to support prior conviction," referring to his 1987 guilty plea to assault with a deadly weapon used as one of the two predicate strike offenses. (Lodg. Exh. 4, p. 3.) Despite his formal admission of all the elements of that offense

---

[1] White's counsel had also moved for a new trial. (Lodg. 6, CT 346-359.) That motion was denied on August 19, 2004, at the same time as the <u>Romero</u> motion. (Lodg. 6 CT 369.)

at his 1987 change of plea hearing, he argued the trial and appellate courts in this case "did not consider all facts pertaining to the plea." He alleged "aider and abetter was a decision we talked about off the record when talking about entering a plea," and he had told the court he "did not actually commit the crime" because he did not "personally inflict great bodily injury or personally use[] a dangerous or deadly weapon." On that basis, he contended the serious felony finding "must be reversed" and, consequently, his third strike sentence imposed in reliance on that prior conviction "must be reversed." (Lodg. 4, p. 3; Lodg. 4, Exh. B, p. 1.) He also argued, in the alternative, he was entitled to "specific performance of the terms of the prior plea agreement to limit the enhancement to 1 to 5 years (as promised)," contending use of the 1987 assault conviction to arrive at a 26-years to life sentence for this Section 290 conviction violates the 1987 agreement. (Lodg. 4, Exh. B, typed p. 2, foll. handwritten portion.) The California Supreme Court summarily denied his Petition For Review on December 20, 2006 (Lodg. 3; Pet. Exh. 10) and his habeas petition on June 13, 2007 (Lodg. Exh. 5; Pet. Ex. 10).

White filed his federal Petition on August 30, 2007, stating nine grounds for relief. First, he argues the jury instruction defining "residence" was prejudicially erroneous, and the Court so finds, his counsel was ineffective on that basis. Second, the statutory definition of "residence" was vague and confusing, a violation of his due process right to clear notice he had to register the Kern County address. Third, insufficient evidence supports any finding he "regularly resided" at the California City home. Fourth, prejudicial failure to instruct the jury the prosecutor had to prove, as an element of the Section 290 offense, White "regularly resided" at the California City address and, if his counsel had a duty to request such an instruction, he was ineffective for failing to do so. Fifth, the instruction he need only have actual knowledge of the general duty to register any second residence, as opposed to specific knowledge he had a duty to register the California City address in particular, was prejudicially inaccurate. Sixth, violation of due process for the trial court's refusal to strike either of White's prior convictions. Seventh, a third-strike sentence for failure to register a second residence, purportedly a mere regulatory matter, is cruel and unusual punishment. Eighth, insufficient evidence supported his 1987 felony conviction for assault with a deadly weapon. Ninth, use of his 1987 conviction as a strike for sentence enhancement purposes violates his plea agreement in that case and due process.

White filed a Motion For Discovery at the time he filed his Traverse on April 1, 2008, seeking production of his September 16, 1987 sentencing hearing transcript. (Dkt No. 18, p. 2.) He sought the discovery in order to pursue his right "to enforce the term of his plea agreement [u]nder Santobello v. New York 404 U.S. 257, 261-262 (1971) & Buckley v. Terhu[n]e 441 F.3d 688 694-695 (9th Cir. 2006)." (Dkt No. 18, 1:23-27 (parallel citation omitted).) He argued "his plea agreement for the 1987 conviction in question contained in specific clause that it could not be use[d] in the future other than for a one and five year prior enhancement." (Dkt No. 18, p. 2.) He contended at his "change of plea proceeding on 8-19-1987, [t]he court stated I understand that it is going to be a change in plea under People v. West. That you are not the person that actually committed this crime." (Dkt No. 18, p. 2.)

In Findings And Recommendations entered April 16, 2008, Magistrate Judge Sandra M. Snyder proposed rejection of White's contention he would not have pled guilty in 1987 to assault with a deadly weapon if he had known the conviction could later be used to enhance his sentence for future criminal conduct beyond a maximum of 5 years. (Dkt 20, 1:21-24.) She found: he "has delayed 20 years following imposition of judgment and 13 years following enactment of California's Three Strikes law to question his prior conviction" rendering it conclusively valid; he failed to show any promise was made in plea negotiations not to use the 1987 conviction in the future, with his own declaration substantiating he was informed it could be so used; a third strike sentence is not additional punishment for the prior convictions but rather is a stiffened penalty for the latest crime, citing Monge v. California, 524 U.S. 721, 728 (1998); and a trial court's failure to inform a defendant of collateral as opposed to direct consequences of a guilty plea does not violate due process, citing United States v. Garrett, 680 F.2d 64, 65-66 (9th Cir. 1982) and Brady v. United States, 397 U.S. 742, 749 (1970). (Id. 3:3-27.) She recommended denial of Petition "Ground Eight" with prejudice, and denial of White's Discovery Motion as lacking good cause or moot. (Dkt 20, 2:1-2, 4:4-5.)

White filed Objections to the Findings And Recommendations. (Dkt No. 22.) He sought a correction, noting the Magistrate Judge's analysis actually addressed Petition Ground Nine, not Ground Eight. (Dkt No. 22 1:24-28.) He argued denial of the discovery motion was analyzed in support of the wrong claim. (Dkt No. 22 p. 2.) He suggested some "stipulation" or promise by the trial judge could be revealed if discovery of the September 1987 sentencing transcript were permitted,

despite the record of the plea agreement he had reached with the prosecutor memorialized in its entirety in the change of plea hearing transcript containing no such promise. (Dkt No. 22, pp. 3-4; *see* Dkt No. 16, Traverse Exh. A.)  By Order entered May 14, 2008, the District Judge then assigned to this case adopted the Findings and Recommendations, after *de novo* review and in consideration of White's objections. (Dkt No. 23.)  The court corrected the claim number referenced in the Findings and Recommendations, then found White "does not contest that his challenge to the use of the 1987 conviction to enhance his current sentence, i.e., ground nine, is without merit," denied Petition Ground Nine with prejudice, dismissed as moot his Motion For Discovery, and referred the matter back to the Magistrate Judge for proceedings on the remaining claims. (Dkt No. 23:, 2:5-17.)  That referral was superseded by the transfer of this matter to the undersigned visiting District Judge.

## II.    DISCUSSION

### A.    Federal Habeas Review

#### 1.    Legal Standards

A federal court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C.A. § 2254(a) (West 2009).  Only errors of federal law can support federal intervention in state court proceedings.  Oxborrow v. Eikenberry, 877 F.2d 1395, 1400 (9th Cir. 1989).  Federal habeas courts are bound by states' interpretations of their own laws. Himes v. Thompson, 336 F.3d 848, 852 (9th Cir. 2003); Estelle v. McGuire, 502 U.S. 62, 68 (1991) (federal courts may not reexamine state court determinations on state law issues).

Federal habeas petitions filed after April 24, 1996 are governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  AEDPA establishes a "highly deferential standard for evaluating state-court rulings." Woodford v. Visciotti, 537 U.S. 19, 24 (2002).  That standard "demands that state-court decisions be given the benefit of the doubt." Id.  Federal courts must presume the correctness of a state court's factual determinations.  The petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).  A federal court cannot grant habeas relief unless it determines a claim adjudicated on the merits in

state court proceedings "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see* Bell v. Cone, 535 U.S. 685, 694 (2002). "[C]learly established Federal law . . . ' refers to the holdings, as opposed to the dicta, of this Court's decisions as of the time of the relevant state-court decision.' " Carey v. Musladin, 549 U.S. 70, 74 (2006) *quoting* Williams v. Taylor, 529 U.S. 362, 412 (2000) (the lack of a holding on the issue presented precluded a finding the state court's decision was contrary to or an unreasonable application of clearly established federal law); *see also* Lockyer v. Andrade, 538 U.S. 63, 73-76 (2003).

A decision is "contrary to" federal law if it either "applies a rule that contradicts the governing law" as set forth in a United States Supreme Court decision, or reaches a different result when confronted with materially indistinguishable facts. Williams, 529 U.S. at 412-13; *see* Bell, 535 U.S. 685. Under the "unreasonable application" clause, a federal habeas court may not issue a writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Williams, 529 U.S. at 411. "The focus of the [unreasonable application] inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams that an unreasonable application is different from an incorrect one." Bell, 535 U.S. at 694; *see* Miller-El v. Cockrell, 537 U.S. 322, 340 (2003) (a state court's adjudication on the merits "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding"); Middleton v. McNeil, 541 U.S. 433, 436 (2004) (*per curiam*) (same).

The denial of a petition by the state's highest court "without comment or citation constitute[s] a decision on the merits of the federal claims," and "such claims [are] subject to review in federal habeas proceedings." Hunter v. Aispuro, 982 F.2d 344, 347-48 (9th Cir. 1992). When there is no reasoned decision from the state's highest court, the federal court "looks through" to the rationale of the underlying decision. Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991). The California Court of Appeal reached the merits of White's federal claims in a reasoned decision associated with the Section

290 conviction and sentence, and the California Supreme Court summarily denied them all as well as the additional challenges to his 1987 conviction presented separately in his habeas petition to that court. The claims are thus exhausted, and they were timely presented in this Petition filed within AEDPA's one-year statute of limitations. 28 U.S.C. § 2244(d)(1).

## 2. **Evidentiary Hearings**

White moved for an evidentiary hearing at the time he filed his Traverse and his Motion For Discovery on April 1, 2008. (Dkt No. 17.) He sought the hearing "[t]o allow petitioner to appeal the final order entered by the California Supreme Court on the merits of his petition" (Dkt No. 17, i:23-26), arguing he never received an evidentiary hearing on his challenges to the validity and use of his 1987 assault conviction. (Dkt No. 17, iii:3-6.) He argues due process and "fundamental fairness in plea bargains has been Violated" because his plea in that case purportedly was not voluntary, he did not fully understand the consequences of the plea, and specific performance of the bargain prohibits use of that prior conviction to enhance his sentence to a third strike term.[2] (Dkt No. 17, pp. i-iv.)

The Magistrate Judge provisionally denied White's Motion For Evidentiary Hearing, by separate Order entered simultaneously with her April 16, 2008 Findings and Recommendations, on grounds the court's backlogged docket did not permit an immediate review of White's state court proceedings. (Dkt No. 21.) "Following a thorough review of the petition's merits, the Court will *sua sponte* issue an order for an evidentiary hearing should it find one necessary." (Dkt No. 21, 1:22-28.) No such Order issued. This Court has now reviewed the merits and disagrees with White's premise he has established "a colorable claim for relief" (Dkt No. 17, vi:12-13) with respect to a purported violation of his plea bargain in the 1987 case, for the reasons discussed below. AEDPA "substantially

---

[2] White relies on Townsend v. Sain, 372 U.S. 293 (1963) for the proposition a federal habeas court "must hold an evidentiary hearing if applicant did not receive a full and fair evidentiary hearing in the state court, either at time of trial or in collateral proceeding," although he acknowledges "in cases where holding of an evidentiary hearing on habeas corpus is not mandatory, such hearing is discretionary with district judge where material facts are in dispute . . . ." (Dkt No. 17, iv:17-v:7.) Not only is Townsend distinguishable from White's circumstances, but it is also a pre-AEDPA case applying a less restrictive standard.

restricts the district court's discretion to grant an evidentiary hearing."[3] <u>Baja v. Ducharme</u>, 187 F.3d 1075, 1077 (9th Cir. 1999); *see also* <u>Bragg v. Galaza</u>, 242 F.3d 1082, 1085, 1089-90 (9th Cir. 2001). White fails to establish an evidentiary hearing is permissible, let alone required, under the AEDPA revisions to 28 U.S.C. § 2254(e). Moreover, "an evidentiary hearing is *not* required on issues that can be resolved by reference to the state court record," as is the case here. <u>Totten v. Merkle</u>, 137 F.3d 1172, 1176 (9th Cir. 1998). Accordingly, the request for an evidentiary hearing is **<u>DENIED</u>**.

## B.    Section 290 Sex Offender Registration Requirements

The jury convicted White of a violation of Section 290(g)(2), a felony, "to wit:  Failure to Register his California City address with the California City police department" pursuant to Section 290(a)(1). (Lodg. 6, CT 342.)  The version of Section 290 in effect at the relevant time, from 2003 through his trial and August 2004 sentencing, in pertinent part, imposes a lifetime obligation on persons convicted of certain sex offenses, while residing in California or, "if he or she has no residence," while "located" in California, to "register with the chief of police of the city in which he or she is residing . . . ."  Section 290(a)(1)(A).  The 1999 Section 290 revisions had added the requirement a person required to register under the statute who "has more than one **residence address or location** at which he or she **regularly resides** or is located" must "register in accordance with subparagraph (A) **in each of the jurisdictions** in which he or she regularly resides or is located. . . ."  Section 290(a)(1)(B) (emphasis added) ("If all of the **addresses or locations** are within the same jurisdiction, the person shall provide the registering authority with all of the **addresses or locations** where he or she regularly resides or is located").  The timing requirements *for registration* were "within five days of moving into, or within, a community" (Section 290(a)(1)(A)), and "annually, within five working days of his or her birthday" (Section 290(a)(1)(D)).  No time limit test for the establishment of a "residence" was then codified.  White's claims arise from the construction of the

---

[3]  "(e) (2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court *shall not hold* **an evidentiary hearing** on the claim *unless* the applicant shows that— (A) the claim relies on— (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; **or** (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; **and** (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense."  28 U.S.C.A. § 2254(e) (emphasis added).

Section 290(a)(1)(B) registration requirement applicable to individuals with more than one residence address where he or she "regularly resides." This Court's review of the state court's decision is accordingly quite limited, as it involves the interpretation of state law:

> We are bound by the California Court of Appeal's interpretation of what § 290 requires of a registrant with regard to giving his notice of a change of address. A state court has the last word on the interpretation of state law. [Citation.] The only question before this court is whether the due process aspect to the California Court of Appeal's decision was objectively unreasonable.

Mendez v. Small, 298 F.3d 1154, 1158 (9th Cir. 2002) (reversing a grant of federal habeas relief where the petitioner had failed to formally register a new address, even though he had incidentally provided a current address to law enforcement personnel in the course of an unrelated contact, holding the state court's interpretation of the notification provisions was not an objectively unreasonable application of federal due process requirements because a reasonable person "would know there is a difference between merely *stating* one's *current* address, and providing *notice* of a *new* address"). Although Mendez addressed a different provision of the Section 290 requirements than White challenges, the federal review standard applies equally to state courts' interpretations of all the codified provisions.

### C.     Federal Habeas Relief Not Available

### 1.     Instructional Error Standard Of Review

On federal habeas review of alleged instructional error, "[t]he only question for us is whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." Estelle, 502 U.S. at 72-73, *quoting* Cupp v. Naughten, 414 U.S. 141, 147 (1973). A jury instruction "allegedly incorrect under state law is not a basis for habeas relief." Id. at 71-72. "[I]n reviewing an ambiguous instruction . . . we inquire 'whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution." Id., *quoting* Boyde v. California, 494 U.S. 370, 380 (1990); *see* Mejia v. Garcia, 534 F.3d 1036, 1045 (9th Cir. 2008), *cert. den*, 129 S.Ct. 941 (U.S. Jan. 12, 2009) (the instruction "may not [be] judge[d] in artificial isolation" but rather must be considered "in the context of the instructions and trial record as a whole").

11

Pursuant to <u>Chapman v. California</u>, 386 U.S. 18, 24 (1967), it is recognized that "certain constitutional errors, no less than other errors, may have been 'harmless' in terms of their effect on the factfinding process at trial." <u>Delaware v. Van Arsdall</u>, 475 U.S. 673, 681 (1986); <u>Sullivan v. Louisiana</u>, 508 U.S. 275, 279 (1993) ("most constitutional errors have been held amenable to harmless-error analysis"). A reviewing court does not ask "what effect the constitutional error might generally be expected to have upon a reasonable jury, but rather what effect it had upon the guilty verdict in the case at hand." <u>Sullivan</u>, 508 U.S. at 279. If an instruction is ambiguous or deficient, the court must find a likelihood the jury applied it in an unconstitutional manner before relief from the result is warranted. *See* <u>Waddington v. Sarausad</u>, -- U.S. --, 129 S.Ct. 823, 831-32 (2009) (reversing a grant of federal habeas relief with respect to a jury instruction parroting the state statute's accomplice liability language, finding the Ninth Circuit should have ended its 28 U.S.C. § 2254(d)(1) inquiry when it found the instruction was unambiguous and, even if the instruction was ambiguous, the circuit court erred under AEDPA in finding the instruction so ambiguous as to render the resulting conviction a violation of due process), *citing, inter alia,* <u>Estelle</u>, 502 U.S. at 72, <u>Middleton</u>, 541 U.S. at 437.

## 2. <u>No Due Process Violation Associated With The Jury Charge</u>

The Court of Appeal noted the parties' stipulation before trial resolved all elements of the charged crime except whether White "resided" at the California City address within the meaning of Section 290. (Lodg. 1, p. 5.) Special Instruction No. 1 contained a statement that "parroted the language of the statute" (<u>Waddington</u>, 129 S.Ct. at 832), advising the jury an individual:

> . . . may have a single place of residence or more than one place of residence. [¶] **If the person who is registering has more than one residence address at which he *regularly resides*, he shall register in each of the jurisdictions in which he regularly resides**.

(Lodg. 6, CT 325 (emphasis added).)

Special Instruction No. 1 also enumerated the elements of the failure to register crime, but without reiterating the "regularly resides" language as a discrete element:

> **In order to prove this crime, each of the following elements must be proved:**
>
> 1. **The defendant is required to register under Penal Code**

**Section 290** within five working days of establishing a second residence or temporary residence or within five days of his birthday.

   2. **The defendant had actual knowledge of his duty to register with the Chief of Police in any city in which he had a residence.**

   3. **The defendant had a residence in California City, Kern County.**

   4. **The defendant *willfully* failed to register with the Chief of Police in California City** within five working days o[f] either

        (a)  coming into California City or
        (b)  changing his residence or
        (c)  his birthday.

(Lodg. 6, CT 325 (emphasis added).)

Special Instruction No. 1 concluded: "In the crime charged in Count one there must exist a union or joint operation of act or conduct and general criminal intent. When a person intentionally does that which the law declares to be a crime, he is acting **with general criminal intent**." (Lodg. 6, CT 326 (emphasis added).) A notation on that page indicates "D objected." To the extent that portion of Special Instruction No. 1 may conflict with the Section 290 requirement of "willful" failure to register, any such error was harmless. White's jury was instructed to "[c]onsider the instructions as a whole and each in light of all the others." (Lodg. 6, CT 309.) The trial court gave a separate definition of "willfully," tailored to the Section 290 requirement the defendant must have had "actual knowledge of the duty to register a second residence":

The word "willfully" when applied to the intent with which an act is done or omitted means with a purpose or willingness to commit the act or to make the omission in question. Further, ***used in these instructions and applied to the case*, the term willfully means that the defendant had *actual knowledge* of his duty to register a second residence and failed to do so.**

(Lodg. 6, CT 327 (emphasis added).)

A limitation of purpose instruction was also given to focus the jury on its narrow task:

Evidence that the defendant gave certain addresses when he was placed on misdemeanor probation two times in Kern County and one time in Los Angeles County **was admitted for the sole purpose of helping you determine whether or not the defendant had a residence in California City, Kern County, if it can do so.** [¶] Do not consider this evidence for any other purpose except the limited purpose for which it was admitted.

13

(Lodg. 6, CT 328 (emphasis added.)

Special Instruction No. 2 further targeted the jury's narrow duty:

> There has been evidence in this case indicating that the defendant may have been required to register pursuant to Penal Code Section 290 in Los Angeles County and/or in San Diego County. That evidence **was admitted for the sole purpose of helping you determine whether or not the defendant had a residence in California City, Kern County, if it can do so, and therefore whether he was required to register in California City, Kern County**. [¶] You are not to speculate or guess whether or not the defendant has been or will be prosecuted in one or both of those other counties. **Your sole duty is to decide whether the People have proved the guilt of the defendant in this case as it relates to registration in California City, Kern County.** [¶] Do not consider this evidence for any purpose except the limited purpose for which it was admitted.

(Lodg. 6, CT 329 (emphasis added).)

### a.  Ground One: "Residence" Definition

White disputes the California City address qualified as his second residence.

> [Petitioner. . .], a resident of Los Angeles county was convicted under Penal Code Section 290, subdivision (A)(1)(B) for failing to register at the Kern County home of his estranged wife and their two children, where [Petitioner] had not live since 1993 but which he visited one day per month and still owned in joint tenancy with is estranged wife. **At the time of [his] October 31, 2003 arrest at this Kern County house, subdivision (A)(1)(B) read, in pertinent part as follows: [¶ "]If the person who is registering has more than one residence address or location at which he or she *regularly resides* or is located, he or she shall register in accordance with subparagraph (A) in each of the jurisdiction[s] in which he or she regularly resides or is located.["]**

(Pet. p. 2 (emphasis added); *see* Pet. Exh. 1, pp. 5-23.)

White contends the trial court prejudicially misdefined "residence" for the jury (Pet. p. 1, foll. printed form): "As used in this instruction, residence means a temporary or permanent dwelling place, which one keeps and to which one intends to return, as opposed to a place where one rests or shelters during a trip or a transient visit." (Pet.  p. 2; Lodg. 6, CT 325:11-13.)  He argues that instruction denied him due process, characterizing the error as a "failure to instruct on the elements of the crime" and as improperly relieving the prosecution of its burden to prove "all elements of the offense charged beyond a reasonable doubt," citing <u>Victor v. Nebraska</u>, 511 U.S. 1, 5 (1994) and <u>Sullivan</u>, 508 U.S. at 277-78. (Pet. p. 3.)  Those cases are distinguishable.

The <u>Victor</u> Court reviewed a challenge to the constitutionality of the trial court's definition of "reasonable doubt," following a defendant's first-degree murder conviction and death sentence, and held there was no due process violation because there was no reasonable likelihood the jurors understood the instructions to allow convictions based on insufficient proof. <u>Victor</u>, 511 at 5, 21, 22-23 (considering the instructions as a whole, two "reasonable doubt" instructions as given correctly conveyed that concept). The <u>Victor</u> case is instructive in White's circumstances only as confirmation a reviewing court must not consider a particular instruction in isolation to determine whether it was constitutionally defective, and when the jury charge as a whole provided adequate guidance, the federal court should conclude no constitutional violation occurred. The <u>Sullivan</u> Court similarly reviewed a "reasonable doubt" instructional challenge by a defendant convicted of first-degree murder and sentenced to death. In that case, however, the Court reversed a denial of relief and remanded, on grounds a constitutionally deficient reasonable-doubt instruction was given and the error was not amenable to harmless-error analysis. Instructional error foreclosing a valid jury verdict requires reversal, such as abrogation of the jury's factfinding responsibility or obligation to find guilt only upon proof of all elements of the crime beyond a reasonable doubt. "Although most constitutional errors have been held amenable to harmless-error analysis, . . . some will always invalidate the conviction." <u>Sullivan</u>, 508 U.S. at 279 (citations omitted).

Instructional error of the kind White posits falls in the category of trial errors subject to harmless error analysis reviewable for its prejudicial effect on the guilty verdict in consideration of the entire jury charge. *See* <u>Sullivan</u>, 508 U.S. at 280, 278 (whereas a defective overarching reasonable doubt instruction vitiates all the jury findings and is not subject to harmless error analysis, an error regarding an element of the offense is subject to harmless error review, ); see <u>Neder v. United States,</u> 527 U.S. 1, 10 (1991); see *also* <u>Arizona v. Fulminante</u>, 499 U.S. 279, 307-08 (1991) (distinguishing "structural defects" in the trial mechanism from "trial error" during the course of the presentation of the case to the jury, as the latter may be "quantitatively assessed in the context of other evidence presented in order to determine whether its admission was harmless beyond a reasonable doubt").

The Court of Appeal disposed of White's objection to the "residence" definition as an attempt "to create an issue where none exists," and rejected his effort to carve out a special meaning for Penal

Code Section 290 purposes that somehow undermines the plain meaning of the word. (Lodg. 1, p. 7.) The court relied on <u>People v. McCleod</u>, 55 Cal.App.4th 1205, 1218-19 (1997) for the proposition "the term 'residence' was so easily understood by a person of ordinary intelligence that it need not be defined for the jury." (Lodg. 1, p. 6: "a person of ordinary intelligence surely understands the term 'residence' to refer to a dwelling place where an individual lives on either a full-time or a part-time basis.") The <u>McCleod</u> court had observed "[n]either the courts nor the Legislature has seen the need to further define the common term of residence for section 290." <u>McCleod</u>, 55 Cal.App.4th at 1219. This Court finds the Court of Appeal reasonably determined the definitions given to White's jury, "while not perfect, adequately conveyed the concept of 'residence' to" them (Lodg. 1, p. 7), and it is bound by the state court's "interpretation of what § 290 requires of a registrant." <u>Mendez</u>, 298 F.3d at 1158. Although the inquiry can end there under 28 U.S.C. § 2254(d), White also fails to identify any evidence from which to infer ultimate juror confusion as to the meaning of "residence" warranting federal due process concern in the context of the entire jury charge. Habeas relief on this ground is accordingly **DENIED.**

> **b.** **Ground Four: Failure To Instruct "Regularly Resided" Is An Element Of The Crime The Prosecution Must Prove**

White argues the prosecution was required to prove that he "regularly resided" in California City, dwelling there for an extended period of time in 2003, and the jury instructions should have separately enumerated that element.. (Pet. Exh. 4, pp. 45-49.) However, as emphasized above, the jury was expressly instructed with the "regularly resides" language of Section 290 elsewhere in Special Instruction No. 1 defining the crime. (Lodg. 6, CT 325: 16-17.) The Court of Appeal concluded: "While it may have been ideal for the trial court to instruct the jury that the prosecution was required to prove that White had a residence in California City where he regularly resided, the issue was squarely before the jury," even without reiteration as an enumerated element. (Lodg. 1, p. 9.) "Therefore, even if the instruction was erroneous, White cannot establish any prejudice under *People v. Watson* (1956) 46 Cal.2d 818, 836." (Lodg. 1, p. 9, citing <u>People v. Flood</u>, 18 Cal.4th 470, 490 (1998) (applying the "harmless beyond a reasonable doubt" standard.) This Court finds that result to be objectively reasonable and not contrary to controlling federal authority, concluding the

28 U.S.C. § 2254(d)(1) inquiry.  Habeas relief on this ground is accordingly **DENIED**.

### c.  **Ground Five:  Knowledge Instruction Re Duty To Register**

A defendant can properly be convicted of willful failure to comply with Section 290 only if the jury finds the defendant had actual knowledge of the statutory duty to register.  <u>People v. Garcia</u>, 25 Cal.4th 744 (2001) (upholding a conviction for a Section 290 registration violation and requiring proof of both a "willful" failure to register as specified in subdivision (g)(2) and of the defendant's actual knowledge of the duty to register); <u>see</u> <u>People v. Poslof</u>, 126 Cal.App.4th 92, 98 (2005) (a finding of willfulness requires proof:  "(1) the defendant had actual knowledge of the duty to register as a sex offender and (2) the defendant failed to register"), <em>citing</em> <u>Garcia</u>, 25 Cal.4th at 753.[4]  Although "notice alone does not necessarily satisfy the willfulness requirement" because guilt turns on what the defendant did <em>not</em> do, "a jury may infer from proof of notice that the defendant did have actual knowledge, which <em>would</em> satisfy the requirement," and "[t]he actual knowledge test satisfies constitutional requirements."  <u>Garcia</u>, 25 Cal.4th at 752, <em>citing</em> <u>Lambert v. California</u>, 355 U.S. 225, 227-29 (1957) (construing a registration statute where violation was unaccompanied by any activity whatever, "mere presence in the city being the test," to conclude "actual knowledge of the duty to register or proof of the probability of such knowledge and subsequent failure to comply are necessary before a conviction under the ordinance can stand").

Instructional error on knowledge of the duty to register  is subject to harmlessness analysis.  <u>Id.</u> at 754-55, <em>citing</em> <u>Chapman</u>, 386 U.S. at 24.  Although the <u>Garcia</u> defendant contended he did not know of the registration requirement, relying solely on his own testimony, the <u>Garcia</u> court found the

---

[4]  In <u>Poslof</u>, a convicted sex offender unsuccessfully argued he did not know he had to register a second residence he had purchased and where he was found living with his teenage daughter in a jurisdiction different from his only registered address.  He argued he never stayed there for five or more consecutive working days and was therefore improperly convicted and sentenced to a third strike term of 27-years to life.  <u>Poslof</u>, 126 Cal.App.4th at 95-97, 106.  That court determined the "five working days" language of Section 290(a)(1)(A) modified the time within which an offender with "more than one residence or location at which he or she regularly resides or is located" must <em>register</em>, and was not a duration-of-stay test for "residence."  <u>Id.</u> at 101-02 ("[T]he five-day notice period was triggered upon defendant establishing an additional location or residence. . . . **When the five-day notice period was triggered in defendant's case is a question of fact for the jury, which is not dependent upon whether he stayed at the residence five or more consecutive days**") (emphasis added).  Both Poslof and White were given an opportunity to register their second addresses but did not do so.  White's omission was even more pointed because he had been previously arrested for misdemeanor failure to register the California City address and had no other address currently registered

jury was properly instructed in consideration of the entirety of the jury charge, and the defendant was convicted on sufficient evidence of notice and a signed form he acknowledged he read informing him of the registration requirement: "[T]he jury's verdict necessarily shows that it discredited the only evidence supporting defendant's claim." Garcia, 25 Cal.4th at 755; *cf.* People v. LeCorno, 109 Cal.App.4th 1058 (2003) (reversing conviction under Section 290 for failure to register as a sex offender because the jury was not instructed the defendant had to have actual knowledge of the duty to register a second residence, and strong evidence supported a finding the defendant did not know intermittent nights he spent sleeping in his friend's basement made that location a second residence, so the "willful" element of the crime was not proven and the instructional error was not harmless beyond a reasonable doubt).

> The premise of White's argument, as we understand it, is that he did not believe he resided at the California City address, and therefore he did not know he had to register as a sex offender with the California City police. He asserts, therefore, that since he did not know he could be found guilty for violating section 290, his conviction cannot stand.
>
> White's position is consistent with, and dependent on, his testimony that he lived in Southern California and did not live in California City. The jury, however, rejected this testimony. **White stipulated that he knew he had to register at each of his addresses.** He argued at trial that he did not live in California City, and therefore did not have to register. **The stipulation established, however, that if White lived in California City, he knew he had to register. When the jury concluded White was not truthful when he denied he resided in California City, it was bound by the stipulation to find White violated section 290.**[5]

(Lodg. 1, p. 10 (emphasis added).)

The Court of Appeal rejected White's "attempt to expand the *Garcia* holding by arguing that the trial court was required to instruct the jury that he knew he was required to register as a sex offender at the California City address" because "*Garcia* does not require such an instruction, and we will not expand its holding to add this requirement." (Lodg. 1, p. 10.) The court concluded White's

---

[5] The Court of Appeal illustrated its premise with a hypothetical, then found: "The jury was charged with making a factual finding that determined the outcome of the trial. White was not entitled to an instruction that even if the jury rejected White's testimony and concluded he maintained a residence in California City, it also must find that White knew he had to register at the California City address when White stipulated he had such knowledge. There was no error." (Lodg. 1, pp. 10-11.)

jury was correctly instructed a person who *willfully* violates Section 290 is guilty of a felony with proof beyond a reasonable doubt that he "had *actual knowledge of his duty to register* with the chief of police *in any city in which he had a residence*." (Lodg. 1, p. 10 (emphasis added).) The Court of Appeal observed: "Neither party considered this point an issue since White stipulated that since 1999 he knew he was required to register at all of his residences." (Lodg. 1, p. 10.) There is no dispute White gave the California City address to law enforcement officials as his own on at least three separate occasions in 2003. White cites no controlling federal authority for the proposition due process requires so pointed a proof with such particularized and fact-specific precision. (*See* Pet. Exh. 5, pp. 50-60.)

State court interpretations of state law are binding on this Court. <u>Himes</u>, 336 F.3d at 852; <u>Estelle</u>, 502 U.S. at 68. "The purpose of section 290 is to assure that persons convicted of the crimes enumerated therein shall be readily available for police surveillance at all times because the Legislature deemed them likely to commit similar offenses in the future." <u>People v. Barker,</u>, 34 Cal.4th 345, 350 357 (2004) (citation omitted) ("forgetting the mandatory registration requirement of section 290 is simply not a legitimate defense to the charge of willfully failing to register") (citation omitted). Similarly, the "purpose of section 290 . . . would be defeated were an offender allowed to remain at one or more undisclosed locations on a regular basis simply because the offender limited his regular or weekly stay to less than five consecutive work days a week." <u>Poslof</u>, 126 Cal.App.4th at 103. White's jury received a separate and adequate "willful" instruction, as set forth above. This Court finds the Court of Appeal reasonably found the facts to conclude the jury's verdict rested on adequate instructions and reflects it found White knew of his obligation to register the California City address but failed to do so. Habeas relief on this ground is accordingly **<u>DENIED</u>**.

### 3.     <u>Ground Two: Fair Notice Of The Meaning Of "Residence" As Codified</u>

White argues even if the definition of "residence" under which he was convicted "was legally valid at the time of his October 31, 2003 arrest," that "legal definition was so vague and confusing" that it violates due process for failure to give him "fair notice that he was required to register at the Kern County address." (Pet. p. 5; Pet. Exh. 2, pp. 26, 31.) He argues the state courts failed to address the issue, even though he raised it on appeal and in his petition for review. (<u>Id.</u>, p. 26 n.12; Pet. p. 5.)

However, the Court of Appeal explicitly rejected the underlying premise of this claim in finding the term "residence" was readily understandable to people of ordinary intelligence, requiring no additional definition from the Legislature, citing McCleod, 55 Cal.App.4th at 1219 ("neither the courts nor the Legislature has seen the need to further define the common term of residence for section 290"). Moreover, the record reveals the court actually reached the merits of this claim. (Lodg. 1, pp. 6-8.)

Although a short-lived amendment to Section 290 after White's conviction introduced a temporal component as a guide to establishment of a "residence" for registration purposes, it did not last. Section 290 has undergone several revisions between the version in effect at the time White was ordered to begin registering as a sex offender upon release from prison to parole in 1999 and his October 2003 arrest for failure to register a second residence, and thereafter.[6] White contends "at the time of appellant's arrest the Legislature had not included an express definition of 'residence' in Penal Code section 290," so that "the statute itself had no guidelines on what constitutes a 'residence' for registration purposes" and "the Legislature can be deemed to have impermissibly set a trap large enough to catch all possible offenders," citing, *inter alia*, City of Chicago v. Morales, 527 U.S. 41, 58 (1999) for the general proposition "the purpose of the fair notice requirement is to enable the ordinary citizen to conform his or her conduct to the law." (Pet. Exh. 2 pp. 32, 27.) White challenges the "legal definition of 'residence' arguably introduced by *Horn*, and thus arguably in effect at the time

---

[6] In support of his argument, White elaborated: "Subdivision ([a])(1)(B) was significantly amended subsequent to [his] arrest." (Pet. pp. 2-3.) He relied heavily on a 2004 addition of subdivision (a)(1)(C)(vii) (Stats. 2004, ch. 761, § 1.3), which **defines "residence" as "a place where a person is living or temporarily staying *for more than five days*"** apparently adopted from People v. North (2003) 112 Cal.App.4th 621. (Lodg. 1, p. 7.) The Court of Appeal declined to take judicial notice of the legislative history as not relevant to its analysis and further found "the posttrial amendments to section 290 do not support White's argument." (Lodg. 1, p. 8.) Not only is North distinguishable, as discussed below, but also the Court of Appeal noted that provision was again amended in 2005 to eliminate the five-continuous-day stay language associated with "residence" (Stats. 2005, ch. 722, § 3.5), so that the instruction given at White's trial "appears to be more consistent with the current definition of 'residence' than the one added by the 2004 amendment." (Lodg. 1, p. 8.) The current Section 290 description of "residence" provides (emphasis added): "one or more addresses at which a person regularly resides, **regardless of the number of days or nights spent there**, such as a shelter or structure that can be located by a street address, including, but not limited to, houses, apartment buildings, motels, hotels, homeless shelters, and recreational and other vehicles." (Lodg. 1, p. 8, quoting Section 290(a)(1)(C)(vii).) The Section 290(a)(1)(B) provision requiring registration at every residence address now appears at CAL. PEN. CODE § 290.010 ("If the person who is registering has more than one residence address at which he or she regularly resides, he or she shall register in accordance with the Act in each of the jurisdictions in which he or she regularly resides, **regardless of the number of days or nights spent there**....")

of appellant's arrest."  (Pet. Exh. 2, p. 28, citing <u>People v. Horn</u>, 68 Cal.App.4th 408 (1998).)

> "[T]he term residence means a temporary or permanent dwelling place which one keeps and to which one intends to return, as opposed to a place where one rests or shelters during a trip or transient visit. Depending on the circumstances, one may have a single place of residence or more than one place of residence."

(Pet. Exh. 2, pp. 28-29, quoting <u>Horn</u>, 68 Cal.App.4th at 414.)

White argues "someone with knowledge of the Penal Code section 290's legislative history and judicial construction" would find the definition "internally contradictory." (Pet. Exh. 2, p. 30.)  He then revisits his jury instruction challenges, all of which have been rejected above.  In its reasoned decision, the Court of Appeal discussed the <u>Horn</u> definition, agreeing with White that definition "was virtually identical to the instruction given" in his case, but distinguishing that case and the others White cited.   None of his cited cases had attempted to define the term "residence" for Section 290 purposes.[7]  In particular, <u>Horn</u> was not addressing the need for a definition of "residence," but rather whether a defendant required to register could have more than a single residence.  (Lodg. 1, p. 6.)

The <u>McCleod</u> court, construing a version of Section 290 before the Legislature had incorporated language differentiating "residence" from "location," discussed timing only as related to the offender's deadline for *notifying authorities of* a change of address, not as a test for *establishing* a "residence" for registration purposes, and concluded the term "residence" was so easily understood by a person of ordinary intelligence  -- "connot[ing] more than passing through or presence for a limited visit[]" --  it need not be defined for the jury.  <u>McCleod</u>, 55 Cal.App.4th at 1218-19.  In contrast, the <u>McCleod</u> court found "the breadth of **the 'location' provision** [only] of section 290" to be "unconstitutionally vague because it encouraged arbitrary enforcement." <u>Id.</u> (emphasis added). The <u>North</u> case is also distinguishable because it addressed the problem of transients' registration

---

[7]  White relies on the 1997 <u>McCleod</u> case and the <u>North</u> case, decided a few weeks before his October 31, 2003 arrest, to argue the "constitutional flaws in the <u>Horn</u> definition of 'residence' were compounded by the existence at the time of appellant's arrest of a second, different legal definition." (Pet. Exh. 2, p. 35.)  The issue and statutory construction of the 2000 version of Section 290(a)(1)(A), (f)(1) in <u>North</u> are inapposite to White's circumstances because the case dealt with a sex offender who had no residence at all where he might be found. <u>People v. North</u>, 112 Cal.App.4th 621, 624 (2003) (construing the terms "located" and "location" to hold unconstitutionally vague the provisions governing changes of "location" and registration at multiple "locations" within a jurisdiction applied to transient sex offenders who have no residence address).  Among other distinctions, White was not a transient.  He had residence addresses to register.

compliance, differentiating "location" from "residence." People v. North, 112 Cal.App.4th 621, 624, 634 (2003) ("[w]hat constitutes a 'regular basis' in this context must be considered in light of the legislative intent to include offenders who are transient, and thus likely to be less 'regular' in their routines than offenders with residences"). "The *McCleod* definition implicitly acknowledges that a 'residence' has an 'address.' " Id. at 632 (noting McCleod was convicted of failing to report a change of address under Section 290(f), "which is consistent with the repeated references to 'residence address' in the statute," and observing the McCleod court was construing Section 290 before it was amended to include "location" as an alternative to "residence"). The North concern is inapplicable to White. Id. at 635 ("It may be that transients are so differently situated from offenders with residences that the current address-based registration requirements cannot be adapted to fit their circumstances").

The Court of Appeal reached the objectively reasonable conclusion the statutory term "residence" is not ambiguous or vague for due process purposes associated with Section 290 registrations, foreclosing federal habeas relief. Accordingly, this ground for relief is **DENIED**.

### 4. Ground Three: Insufficient Evidence To Support Section 290 Conviction

White contends insufficient evidence supports his conviction for failure to register the California City address, citing Jackson v. Virginia, 443 U.S. 307, 318-19 (1979). (Pet. pp. 1-2.) California applies the clearly established federal due process standard for sufficiency of evidence reviews. People v. Johnson, 26 Cal.3d 557, 575-78 (1980), *citing* Jackson, 443 U.S. 307. The reviewing court's "critical inquiry" is "whether the record could reasonably support a finding of guilt beyond a reasonable doubt" applied "with explicit reference to the substantive elements of the criminal offense" as defined by state law. Jackson, 443 U.S. at 318 (footnote omitted), 324, n. 16, *applying* In re Winship, 397 U.S. 359 (1970). Evidence is sufficient as long as any rational trier of fact could have been persuaded of the defendant's guilty, viewing the result in the light most favorable to the judgment and drawing all reasonable inferences from the evidence which support the jury's verdict. Id. at 319. On habeas review, federal courts inquire whether the state court's holding involved an objectively unreasonable application of Jackson. Juan H. v. Allen, 408 F.3d 1262, 1274, 1275 n. 13 (9th Cir. 2005) (concluding "the Supreme Court's analysis of AEDPA in Williams [529 U.S. at 409] compels"

the conclusion that review standard applies).

White contends even if the jury was adequately instructed with a "residence" definition and with "regularly resides" language, insufficient evidence supports the finding he "regularly resided" at the California City address. (Pet. Exh. 3, pp. 38, 41-44.) He argues the Court of Appeal misstates the record in asserting "White told [Officer] Patillo he lived at the California City address when not working in Southern California." (Pet. p. 6, citing RT 969.) He represents "the record shows that appellant did tell the officer that he 'stays' at the Kern County house when not working in San Diego." (Id.) This Court finds that purported discrepancy to be immaterial. The routine of his visits, whether to "stay" or to "live," informs the result that the California City address was a place where he could be regularly contacted by authorities, the very purpose of sex offender registrations. Furthermore, he stipulated he had not registered any address in any jurisdiction since September 20, 2002, and when he was arrested at the California City address on October 31, 2003, he identified only his work location in San Diego and the California City residence as places he "stayed." (Lodg. 1, p. 2.)

This Court further finds the state court result objectively reasonable in consideration of the acknowledged "regularity" of White's presence at the California City address. "Regularly" in the statutory phrase "regularly resides" incorporates not merely the temporal connotation of duration of a stay, but also a connotation of routine conduct of the kind White admits when he confirms he went "once per month" to a residence he owned to visit his children and collect his mail.[8] Applying the Jackson standard, this Court finds substantial evidence supports his conviction. He chose to provide only the California City address in this and other formal proceedings and circumstances, including to law enforcement on at least three occasions in 2003, without mentioning to them at those times any Los Angeles County address in Bellflower or Long Beach he contended at trial he thought of as the residences where he lived. He informed authorities he "stayed" there "when not working in San Diego." He had been prosecuted for misdemeanor failure to register the California City address only a few months before his arrest in this case, evidence standing alone of actual knowledge of his duty

---

[8] The adverb "regularly" denotes: "recurring . . . at fixed . . . or normal intervals," or "conducted, scheduled, or done in conformity with established usages." "Regular" stresses conformity to a pattern ("the club's *regular* monthly meeting"). Merriam-Webster's Collegiate Dictionary, Eleventh Ed., 2007, pp. 1048-49.

and willful avoidance. The inescapable inference of deliberate failure to register that address amply supports conviction of a Section 290 violation when the California courts have held even "forgetting" to register is no defense. *See, e.g.*, <u>Barker,</u>, 34 Cal.4th at 350, 357.

In summary, the Court of Appeal reasonably found "residence" has a commonly-understood meaning, and White stipulated he had actual knowledge he was required to register all of his residences. Substantial evidence was presented from which a reasonable jury could conclude White knew he had a duty under Section 290 to register the California City address as a residence where authorities could contact him, and he wilfully failed to do so. A federal habeas court does not reweigh evidence or substitute its opinion for that of the state courts on factual determinations. *See* <u>Woodford</u>, 537 U.S. at 24. Accordingly, habeas relief on this ground is **<u>DENIED</u>**.

**5.** **<u>Ground Six: Trial Court's Refusal To Strike Either Of His Prior Convictions As Abuse Of Discretion And Denial Of Due Process</u>**

As traced by the Court of Appeal, after the jury convicted him of the Section 290 offense, "White admitted he suffered a prior rape conviction that qualified as a strike, which added a one-year enhancement to his sentence." (Lodg. 1 pp. 1-5.) That admission left for determination whether the 1987 assault with a deadly weapon conviction constituted a second strike, exposing him to a third strike sentence for the Section 290 conviction. He submitted to a bench trial on the issue, with a finding by the trial court "the second conviction . . . constitute[d] a strike within the meaning of section 667, subdivisions (b) through (i)," followed by denial of his "motion to have one of the prior convictions struck pursuant to *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497." (Lodg. 1, pp. 1-5.) The Court of Appeal found no abuse of discretion in denying the motion to strike. White argues the decision not to strike a prior denied him due process for failure to consider all mitigating factors, citing *inter alia* <u>People v. Carmony</u>, 33 Cal.4th 367, 376 (2005), <u>People v. Cluff</u>, 87 Cal.App.4th 991 (2001), <u>People v. Williams</u>, 17 Cal.4th 148, 161 (1998).[9] He also cites Ninth Circuit

---

[9] "[I]n ruling whether to strike or vacate a prior serious and/or violent felony conviction allegation or finding under the Three Strikes law, . . . or in reviewing such a ruling, the court in question must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." <u>Williams</u>, 17 Cal.4th at 161.

cases reviewing the exercise of sentencing discretion in federal courts applying federal law, which similarly requires individualized consideration of the defendant's circumstances.

Contrary to White's representations, he received individualized analysis of his circumstances in express consideration of such mitigating factors as his good work efforts and laudable support of his family, among other things, but those positive factors were not compellingly supportive of making an exception to the three strikes sentence supported by his criminal record.[10] (Lodg. 1, p. 33.)

> White knew he was required to register. He had been prosecuted in January 2003 for failing to register in Kern County, yet still failed to comply with the registration requirements upon his release from jail. He had a lengthy and violent record, with an indication that alcohol played a part in at least some of his criminal activities. Yet, he had done nothing to address this problem as evidenced by his 2003 misdemeanor driving under the influence of alcohol citation. White had a job where he regularly worked when he was not incarcerated. He had numerous violations of probation, however, some of which resulted in additional jail time. One easily could infer from his conduct that he was trying to evade police observation. He did not register when he moved in January 2004 [*sic*], did not register on his birthday, and failed to register in Kern County, even after being prosecuted for failing to do so. It appears that shortly after White completed his parole obligations from the rape conviction in August 2002, he essentially stopped all efforts to comply with section 290. [¶] **While White may not have been a 'poster boy' for the three strikes law, he certainly fell within the spirit of the scheme. We cannot say that no reasonable person would have denied White's *Romero* request. Accordingly, the trial court did not abuse its discretion**.

(Lodg. 1, pp. 22-23.)

This Court is unable to conclude those factual findings are objectively unreasonable, as would be required in order to disturb that result, even were a due process question presented.. A trial courts' exercise of its discretion in the treatment of prior strike convictions under California sentencing law raises no cognizable federal issue in these circumstances. Federal habeas courts may not revisit state court findings on matters of state law. Himes, 336 F.3d at 852; Estelle, 502 U.S. at 68. White identifies no clearly established United States Supreme Court authority the state court unreasonably

---

[10] The Court of Appeal carefully reviewed the record, including White's positive attributes (*i.e.*, he was hardworking, supported his family, paid his taxes, previously registered, and had avoided the conduct that led to his prior rape conviction) and pertinent California authority, as had the trial court. (Lodg. 1, pp. 16-23.) The state court substantiated its conclusion White does not warrant discretionary exception from the operation of a Three Strikes law applying Romero, using guidance from Williams, 17 Cal.4th 148 and Carmony, 33 Cal.4th at 374, distinguishing Cluff. (Lodg. 1, p. 22.)

25

applied or applied in a manner causing a result contrary to any such authority associated with that discretionary act. 28 U.S.C. § 2254(d). To the extent this claim overlaps White's Ground Eight and Ground Nine claims attacking various aspects of the use of the assault prior as a strike offense, those issues are addressed below. The abuse of discretion ground for relief is **DENIED**.

### 6. Ground Seven: Third Strike Sentence As Cruel And Unusual Punishment

White argues his third strike sentence of 26-years to life for violation of Section 290 is cruel and unusual punishment under both the federal and state constitutions. He attacks California's Three Strikes law as "the most severe in the country" and its application in his case as disproportionate because he characterizes his failure to register as "a mere regulatory offense." (Pet. p. 10; see Pt. Exh. 7, pp. 73-83.) He further argues his violation of the law was "technical," his sex offense had occurred ten years before his trial for the Section 290 offense, his sentence is severe compared to other "first time" offenders, and the three strikes sentencing scheme fails to consider variations in individual culpability. He argues the "Court of Appeal should have followed Carmony and held that the sentence here was grossly disproportionate to the offense and constituted cruel and unusual punishment under both[] the state and federal Constitutions." (Pet. p. 10, citing Carmony, 127 Cal.App.4th 1066.) He also relies on Ewing v. California, 538 U.S. 11, 20 (2003) (upholding a three-strikes sentence for felony grand theft as not a violation of the Eighth Amendment) for the proposition his is "one of those rare cases in which the harshness of the Three Strikes sentence is grossly disproportionate to the gravity of the predicate offense . . . ."[11] (Pet. Exh. 7, p. 79.)

---

[11] A recent Ninth Circuit case reversed a denial of habeas relief on grounds the defendant's sentence of 28-years to life under California's three strikes law, following his conviction for failure to update his annual sex offender registration, was cruel and unusual punishment, and the state court unreasonably applied federal Eighth Amendment law. In Gonzalez v. Duncan, 551 F.3d 875 (9th Cir. 2008), the court found, on fact-specific grounds, an inference of gross disproportionality arose when comparing the offense to the sentence and from inter- and intra-jurisdictional comparisons. In reaching its result, the Gonzalez court emphasized: "Our analysis in no way calls into question the constitutional validity of § 290(a)(1)(D) or California's ability to criminalize its violation. We evaluate the social justification for the requirement only to determine whether the Three Strikes sentence imposed in Gonzalez's case exceeds constitutional limits." Id. at 885 n.8. However, Gonzalez is distinguishable from White's circumstances. That court was reviewing the Section 290(a)(1)(D) annual registration update obligations rather than the Section 290(a)(1)(B) second residence registration obligation under which White was convicted, and the implicated equities differ. Gonzalez had attempted to comply with the within-five-days-of-birthday annual registration requirement, he had no new information to update, and the state was actually aware of that fact. Id. at 885. His transgression was accordingly "only tangentially related to the state's interest in ensuring that sex offenders are available for police surveillance,"

White's ten-page argument in support of this claim (Pet. pp. 73-83) is matched by the Court of Appeal's eight-page analysis rejecting it. (Lodg 1, pp. 25-33). "[T]he Eighth Amendment applies in noncaptial cases only in the extremely rare cases where the sentence was grossly disproportionate to the crime," and the "California Constitution applies only if the punishment is 'so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity.'" (Lodg. 1, p. 30 (citation omitted).) The court carefully traced the standards associated with Eighth Amendment sentencing jurisprudence emerging from: <u>Rummel v. Estelle</u>, 445 U.S. 263 (1980); <u>Solem v. Helm</u>, 463 U.S. 277 (1983); <u>Harmelin v. Michigan</u>, 501 U.S. 957 (1991); <u>Ewing</u>, 538 U.S. 11; and <u>Lockyer</u>, 538 U.S. 63. The court reviewed that controlling authority in detail as it has evolved in the three-strikes context, as well as the seminal cruel and unusual punishment case under the California Constitution, <u>In re Lynch</u>, 8 Cal.3d 410 (1972).

The Court of Appeal first rejected White's contention his case should be compared to that of other first-time offenders, noting he is not a first-time offender. "[T]he sentence a first-time offender would receive for various crimes is not relevant to this analysis." (Lodg. 1, p. 31.) Next, the court observed the third strike term he received "reflects the seriousness of the latest conviction, contrary to White's one-size-fits-all argument," because Three Strikes applies "only to a very narrow class of defendants – those who have committed two violent or serious felonies in the past and then commit another felony," as he did, and he received the minimum third strike sentence, (<u>Id.</u>) The court dismissed as "misplaced" White's reliance on his assertion California has the most severe three-strikes law in the nation as a fact, even if true, which "in and of itself, does not establish, or even suggest, that White's sentence is cruel and unusual," citing <u>Harmelin</u>, 501 U.S. at 1000 (Kennedy, J. concurring).

---

and thus his compliance failure involved only "the most technical violation of the section 290 registration requirement" which, "by itself, pose(s) no danger to society." <u>Id.</u> at 884, *quoting* <u>People v. Cluff</u>, 87 Cal.App.4th 991, 994 (2001). The <u>Gonzalez</u> court provides a thorough overview of Eighth Amendment standards and principles and the California courts' treatment of "Three Strikes sentences triggered by violations of the sex offender registration law.'" <u>Id.</u> at 885 ("California courts have recognized that the distinction between a conviction for failure to register after a change of address as required by § 290(a)(1)(A), and a conviction for failure to update registration annually as required by § 290(a)(1)(D), is critical"). White's offense arose in the context of failing to register, not simply the formality of an annual update to re-register the same information already provided. "Although we independently evaluate federal constitutional claims, in doing so we are bound by the California courts' interpretations of California law." <u>Id</u>

07cv1257-IEG(PCL)

(Id.) His argument the Three Strikes statutory scheme itself violates the Eighth Amendment has been rejected by the United States Supreme Court. *See, e.g.*, Ewing, 538 U.S. at 24-25 (three strikes legislation is a rationale policy decision made by the California state Legislature, and "[n]othing in the Eighth Amendment prohibits California from making that choice").

The Court of Appeal also found "unpersuasive" White's argument his rape conviction was remote, having occurred 10 years before his Section 290 felony conviction, rendering his three-strikes sentence for the latter offense cruel and unusual:

> It is correct that White was convicted of rape in 1994. He spent the next five years in prison for this crime. He spent two more months in prison when he violated his parole. He spent six months in jail when he violated his parole for the misdemeanor conviction for failing to register as a sex offender. Therefore, **White spent a little more than three years outside of the prison system since his rape conviction. During this time, White was convicted of three separate crimes, which indicates that White should be included in the three strikes law, not excluded.**

(Lodg. 1, p. 31 (emphasis added).)

Finally, the Court of Appeal distinguished White's circumstances from those of the defendants in the cases he cited to argue his violation of the law was only a "technical" failure to act as opposed to an affirmative criminal act,. (Lodg. 1, pp. 32-33.) "Unlike Carmony, White's actions establish a complete disregard for the registration requirement, thereby defeating the purpose for the registration requirement because he was not readily available for police surveillance." (Id. at 31.) White was not only "convicted of the crime of failing to register at a second residence address, [but also] the testimony at his trial established that he failed to register when he changed his address in Southern California and failed to register within five days of his birthday." (Id. p. 31, distinguishing Carmony, 127 Cal.App.4th at 1078.) "Even though both violated the same statute, White's crime was not nearly as innocent or harmless as the appellate court found Carmony's crime to be" when it held a third strike sentence was cruel and unusual punishment under both the state and federal constitutions.[12] (Id.)

---

[12] "Carmony had registered one month before his birthday, but failed to register within five days of his birthday with the same information. His parole agent knew his registration information had not changed in that one-month period and arrested Carmony at his registered address. . . . The appellate court specifically found that 'Because a 25-year recidivist sentence imposed solely for failure to provide duplicate registration information is grossly disproportionate to the offense, shocks the conscience of the court and offends notions

Moreover, "there was no evidence Carmony had the numerous additional criminal violations in a relatively short period of time that White incurred since his rape conviction." (Id. p. 33.) Despite "some similarities between White and Carmony (both were productive members of society who appeared to be hardworking), . . . the differences are so great as to render the analysis in *Carmony* inapposite," and "[s]ince White's entire argument is, in essence, a repetition of the appellate court's analysis in *Carmony*, we reject this argument." (Id. p. 33.)

> White's serious and continuous criminal record, his knowledge of the registration requirement (as demonstrated by his 2003 misdemeanor conviction for failing to register), and his repeated failure to comply with those requirements place him in the class of persons at whom the three strikes law was directed. These factors also convince us the sentence is not grossly disproportionate to the crime, and does not shock our conscience. We conclude, therefore, that White's sentence does not violate either the state or federal constitutional prohibitions on cruel and unusual punishment.

(Lodg. 1, p. 33.)

This Court finds the Court of Appeal correctly identified the applicable federal law, and its analysis of White's Eighth Amendment claim was neither contrary to nor an unreasonable application of that controlling authority, nor did the result entail an unreasonable determination of the facts of his case. This Court on federal habeas review is not empowered to substitute its opinion for that of the state courts. Accordingly, this ground for relief is **DENIED**.

### 7. Ground Eight: Sufficiency Of Evidence To Support Prior Conviction As A Serious Felony

White argues his 1987 felony assault with a deadly weapon conviction must be reversed as not supported by sufficient evidence, and his third strike sentence in this case along with it. (Pet. Exh. 8, pp. 1-8.) "Petitioner would not have agreed to the plea bargain had he known that the terms and consequences could later be raised to his prejudice and detriment at a later date, as he had a good defense," and "[a]lthough petitioner performed his part of the agreement, the new punishment in the new case, is in excess of what he expected and agreed to, as an enhancement, in the prior plea

---

of human dignity, it is cruel and unusual punishment under both the state and federal Constitutions.' " (Lodg. 1, p. 32, quoting Carmony, 127 Cal.App.4th at 1072-73.) In contrast, White had never registered the California City address since his 1999 release from prison, despite actual notice he needed to do so, and he had no currently registered address at all on October 31, 2003.

negotiations and agreement in 1987, for any new felony."[13]   (Dkt No. 17, ii:15-iii:1.)

White's attempt to revisit his 1987 assault case under a theory insufficient evidence supports that conviction overlaps his Ground Nine due process challenge and his Ground Six abuse of discretion challenge, both of which have been rejected.  Sufficient evidence in the form of White's admissions under oath to each element of the assault crime at the time he pled guilty, for whatever reason, defeat this claim.  (Dkt No. 16, Exh. A, 9:5-16.)  The change of plea transcript reveals he pled guilty to Count II, a Section  245(a)(1) felony offense of assault with a deadly weapon, of a three-count Information with indications of a possible prior offense, in exchange for dropping the two other charges and avoiding trial with exposure to a harsher sentence than the bargain he secured. (a maximum of four years in state prison).  (Dkt No. 16, Exh. A, 6:21-7:1.)  He acknowledged on the record he had received no promises with respect to the sentence or any other component of his plea bargain other than those recited on that record, which is silent with respect to any collateral consequence associated with the agreement.  (Dkt No. 16, Exh. A, pp. 7-8.)  The plea was identified on the hearing record as pursuant to <u>People v. West</u>, 3 Cal.3d 595 (1970).[14]  Although a <u>West</u> plea under California law does not require that the defendant admit guilt of the elements of the crime (<u>U.S. v. Vidal</u>, 504 F.3d 1072, 1076, 1087-89 (2007)), White admitted on the record every element of the crime, conclusively establishing the factual predicate for a valid conviction.  His responses established he understood the charges as read to him, he understood the several constitutional rights he was waiving by pleading guilty, and he expressly admitted all the elements of the charge "you did willfully and unlawfully commit an assault upon Alison Murtaugh with a deadly weapon, to wit, a knife and

---

[13]  Under clearly established federal law, a criminal defendant has a due process right to enforce the terms of his plea agreement.  <u>Santobello</u>, 404 U.S. at 261-62 "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." <u>Id.</u> at 262.  Plea agreements "must be construed in accordance with state law." <u>Buckley</u>, 441 F.3d at 690. "In California, plea agreements are construed in the same manner as all other contracts." <u>Id.</u>  White's punishment for the assault offense is not altered by application of the subsequent Three Strikes law to enhance his sentence for the new felony offense.  <u>Monge</u>, 524 U.S. at 728.

[14]  The <u>West</u> court approved the role of plea bargains, upheld the validity of a *nolo contendere* plea to a lesser offense reasonably related to the charged offense, addressed procedures for accepting or rejecting plea bargains, and required they be disclosed on the record:  a defendant thus "demonstrates that he not only knows of the violation but is also prepared to admit each of its elements." <u>West</u>, 3 Cal.4th at 612.

by means of force likely to produce great bodily injury." (Lodg. 1, pp. 14-15.)  The Court of Appeal reasonably relied on his admissions as supporting a valid conviction of that crime based on sufficient evidence.

> The information charged White with using a knife when he assaulted Murtaugh.  When White pled guilty, he admitted the truth of this allegation.  This was substantial evidence that supported the trial court's finding that White personally used a dangerous or deadly weapon (a knife) when he committed the assault.  [¶]  Nothing in the record supports White's argument that he only may have aided or abetted the assault, as opposed to personally assaulting Murtaugh.  Nor did White argue in the trial court that he merely aided and abetted the assault.

(Lodg. 1, p. 15.)

Section 1192.7(c)(23) incorporates within the serious felony category "any felony in which the defendant personally used a dangerous or deadly weapon."  For enhanced recidivist sentencing purposes, Section 667(d)(1) encompasses prior convictions for serious felony convictions.[15]  The Court of Appeal reasonably concluded the record of White's plea conclusively established his guilt of that "serious" felony for Three Strikes purposes.  Habeas relief on this ground is accordingly **DENIED**.

### 8.    Ground Nine:  Due Process Challenge To  Use Of 1987 Conviction As Prior Strike

White's claim use of the 1987 conviction to enhance any sentence more than a maximum of five years for a different felony conviction violates his 1987 plea agreement (Pet. Exh. 9, pp. 1-15) was denied with prejudice along with denial of his discovery motion.  (Dkt No. 23.)

### 9.    Ineffective Assistance Of Counsel ("IAC")

White purported to preserve IAC claims associated with his alleged instructional errors in Ground One (Pet. p. 5; Pet. Exh. 1, pp. 23-25) and in Ground Four (Pet. p. 6; Pet. Exh. 5, pp. 50-51). His IAC claims are mooted by the findings no instructional error occurred at his trial, or any such error was harmless beyond a reasonable doubt, foreclosing his ability to satisfy both prongs of the IAC test.

---

[15]  Section 667(d)(1) provided (emphasis added):  "Notwithstanding any other law and for the purposes of subdivisions (b) to (i), inclusive, a prior conviction of a felony shall be defined as:  (1)  Any offense in subdivision (c) of Section 667.5 as a violent felony **or any offense defined in subdivision (c) of Section 1192.7 as a serious felony** in this state. . . ."

*See* <u>Strickland v. Washington</u>, 466 U.S. 668 (1984); <u>Bell</u>, 535 U.S. at 694.

**III.    CONCLUSION AND ORDER**

      For all the foregoing reasons, this Court finds the state court decision did not result in an unreasonable application of clearly established Federal law nor involved an unreasonable determination of the facts under any of White's theories.  28 U.S.C. § 2254(d)(1).  His federal habeas Petition is accordingly **<u>DENIED</u>** in its entirety, and judgment shall be entered terminating this action with prejudice.

      **IT IS SO ORDERED**.

**DATED:  May 19, 2009**

**IRMA E. GONZÁLEZ, Chief Judge**
**United States District Court**

32